UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                               Plaintiff,                  REPORT AND
                                                                      RECOMMENDATION

          -against-                                                    CR 12-0062 (ADS) (ETB)

ROBERT LEE HOUSTON,

                               Defendant.
------------------------------------------------------------------X

TO THE HONORABLE ARTHUR D. SPATT, United States District Judge:

      The indictment in this action charges the defendant, Robert Lee Houston, with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Before the court is the defendant's motion to suppress post-arrest oral statements that he made to the police on January 11, 2012. For the following reasons, I recommend that the defendant's motion to suppress be denied.

FACTS

      An evidentiary hearing was held before the undersigned on December 12, 2012. This report constitutes my findings of fact and conclusions of law, pursuant to 28 U.S.C. § 636(b)(1)(A).

I.      Special Agent Gregory Kies' Testimony

      The Government's first witness was Special Agent Gregory Kies ("Agent Kies"), the

arresting agent. Agent Kies has been an agent with the Federal Bureau of Investigation ("FBI") for over ten years and is assigned to the Long Island gang task force. (Tr. 2.) Agent Kies' duties and responsibilities in this position include obtaining intelligence regarding gang activity on Long Island, developing confidential sources that provide information and conducting criminal investigations related to drugs, guns, narcotics trafficking, and violence committed by gangs. (Tr. 3-4.)

Agent Kies testified that on January 11, 2012, he and his task force team obtained a search warrant for the defendant's residence at 65 Redington Street in Bay Shore, New York. (Tr. 4.) After obtaining the warrant, two teams - an arrest team and a search team - proceeded to the defendant's residence. (Tr. 4.) Agent Kies was a member of the arrest team, which included Sergeant Billy O'Sullivan and Police Officers Jimmy Gonzalez, Brian Kegan and Luke Reardon from the Suffolk County Police Department, as well as joint task force officer Joe Mortorell. (Tr. 4-5, 9-10.) After arriving at the defendant's residence, the arrest team established surveillance in a gravel parking lot across the street from the home while the search team was in a separate vehicle parked around the block. (Tr. 4-5.)

The arrest team conducted surveillance for approximately forty minutes after arriving at the defendant's residence. (Tr. 26-27.) At approximately 3:40 p.m., Agent Kies and his team observed the defendant exit his home and begin walking down the driveway toward Redington Street. (Tr. 5, 27.) The defendant then crossed over Redington Street, where the arrest team was located. (Tr. 5.) Once the defendant reached the opposite side of Redington Street, Agent Kies exited the vehicle he was in and identified the arrest team as police. (Tr. 5, 29-30.) The defendant was then arrested and taken into custody. (Tr. 5, 27.)

During his arrest, the defendant was placed on the ground and handcuffed, and a safety sweep was conducted of his body, at which time marijuana was discovered. (Tr. 8, 28, 31.) The defendant was asked if there was anything the officers need to know about inside the house. (Tr. 8, 32, 34; Pl. Ex. 3500-GK-2.) The defendant replied that his child was in an upstairs bedroom and that there was a shotgun in the house. (Tr. 8, 32, 34; Pl. Ex. 3500-GK-2.) Agent Kies testified that the defendant was not provided his Miranda warnings prior to being asked this question and that the purpose of the question was to ascertain, for safety purposes, what the officers might find when they entered the house. (Tr. 9, 34-35.) According to Agent Kies, since agents and officers were about to enter the home, they needed to know whether there were any children, animals or people in the house that could potentially barricade themselves or if there were any weapons in the house that anyone there could possibly obtain.[1] (Tr. 9.)

Once the defendant was secured, Agent Kies and the arrest team walked back to the residence with the defendant. (Tr. 10.) At this point, the defendant was orally advised of his Miranda rights by Agent Kies. (Tr. 10-11, 46.) Agent Kies testified that the defendant acknowledged that he understood his rights and that he orally waived them at that time. (Tr. 10-11.) While Agent Kies was unable to recall specifically what the defendant said upon being advised of his rights, he testified that his understanding was that the defendant wanted to cooperate with law enforcement and was agreeing to speak to the officers arresting him. (Tr. 11-12, 47.) Agent Kies further testified that the defendant expressed concern for the safety of his family if he were to cooperate. (Tr. 12, 55.)

---

[1] See footnote 2, infra, regarding the representation by the Government not to introduce at trial the defendant's pre-Miranda statement with regard to the shotgun in his home.

At the same time the defendant was being arrested, the search team began executing the search warrant inside the defendant's residence. (Tr. 8, 13.) The search began at approximately 3:45 p.m., around the time the defendant was arrested, and concluded at approximately 5:10 p.m. (Tr. 40-41; Pl. Ex. 3500-GK-1.) A shotgun and ammunition were recovered during the search and seized. (Tr. 13-16; Pl. Ex. 3500-GK-11.)

Once the search of the defendant's residence was completed, the defendant was transported to the FBI's office in Melville. (Tr. 16, 61.) Upon arriving at the FBI office, the defendant was fingerprinted and photographed and was again advised of his Miranda rights - this time in writing. (Tr. 16, 62-63; Pl. Ex. 3500-GK-10.) Agent Kies testified that the defendant acknowledged understanding his rights and signed an FD-395, which is a written waiver of advisement of rights form. (Tr. 17, 69; Pl. Ex. 3500-GK-10.) Agent Kies and Special Agent Sean Tumulty ("Agent Tumulty"), who was also present during the questioning of the defendant at the FBI's Melville office, signed the FD-395 as well. (Tr. 17; Pl. Ex. 3500-GK-10, 64.) The defendant was advised of his rights at 6:25 p.m. and the witnesses' signatures were recorded at 6:29 p.m. (Tr. 18-19, 69-70; Pl. Ex. 3500-GK-10.)

Once the defendant waived his Miranda rights in writing, as reflected by the Government's Exhibit 3500-GK-10, he was interviewed by Agent Kies. (Tr. 19.) Agent Kies testified that during the interview, he and the defendant discussed the defendant's dealing of marijuana, other drug dealing he had done in the past, how the defendant obtained the shotgun, as well as an additional weapon, and information relating to the Bloods street gang and other potential gang members on which the FBI sought information. (Tr. 19-20, 70.) As stated above, Agent Tumulty was present during this interview. (Tr. 20.) Agent Kies further testified that

Police Officers Kegan and Gonzalez, who had been part of the arrest team, were also present for parts of the interview and that another FBI agent, Carmine Esposito, arrived towards the end of the interview. (Tr. 20, 83.) The interview of the defendant lasted approximately two to two and one-half hours. (Tr. 70-71; Pl. Ex. 3500-GK-3.) A written summary of the defendant's interview was created by Agent Kies on January 16, 2012. (Tr. 72-74; Pl. Ex. 3500-GK-4.)

During the interview, the defendant advised the officers that he had purchased the shotgun from an individual named "Joe" for approximately seventy-five or one hundred dollars. (Tr. 21; Pl. Ex. 3500-GK-4.) The defendant explained that he had the shotgun because he was concerned about robberies in the area and with the neighborhood in general, but that he had never loaded it. (Tr. 21.) The defendant also acknowledged that the ammunition for the shotgun belonged to him. (Tr. 21, 79-80.) In addition, the defendant told the officers that he also purchased another weapon, a .444 caliber rifle, and that just prior to Christmas in 2011, he had provided that rifle to an individual named "Y-B Banga Loopie." (Tr. 21; Pl. Ex. 3500-GK-4.) Finally, the defendant acknowledged that it was illegal for him to possess firearms because he was a convicted felon. (Tr. 21, 79.)

Agent Kies testified that the defendant had a cellular telephone on his person at the time he was arrested and that he agreed to allow the officers to search the telephone. (Tr. 22.) The defendant signed an FD-26, which is an FBI consent to search form, permitting officers to search his cellular telephone. (Tr. 22-23; Pl. Ex. 3500-GK-12.)

Agent Kies further testified that during the time that the defendant was arrested and questioned, he never asked for an attorney or to remain silent. (Tr. 25, 89-90.) Nor did the defendant say anything that could have been interpreted as a request to remain silent or to consult

with an attorney. (Tr. 26, 89-90.) According to Agent Kies, the defendant appeared "relaxed" during the interview. (Tr. 81.)

Following the interview, at approximately 9:08 p.m. the defendant was transported from the FBI's Melville office to the Suffolk County Police Department Third Precinct. (Tr. 74.) After arriving at the Third Precinct, the defendant was immediately taken to South Side Hospital for a medical issue related to his breathing, arriving at the hospital at approximately 9:45 p.m. (Tr. 74-75.) The defendant was given a breathing treatment at the hospital and departed there at approximately 11:30 p.m. (Tr. 75.) The defendant was returned to the Third Precinct at approximately 11:50 p.m. and was lodged there for the night. (Tr. 76.)

II. Special Agent Sean Tumulty's Testimony

Special Agent Sean Tumulty also testified on behalf of the Government. Agent Tumulty has been an FBI agent for approximately one and one-half years. (Tr. 100.)

Agent Tumulty testified that he participated in the interview of the defendant at the FBI's Melville office on January 11, 2012, during which time the defendant was advised of his Miranda rights by Agent Kies, who read them directly from the FD-395 advisement of rights form. (Tr. 101-02, 104-05, 108-09.) Agent Tumulty further testified that after being read his rights, the defendant was asked whether he understood them and indicated that he did. (Tr. 102-03, 111-13.) The defendant was then presented with the advisement of rights form and given an opportunity to read it. (Tr. 114-15.) Agent Tumulty witnessed the defendant sign the written waiver of his rights form and then signed the document himself. (Tr. 102-03, 114-15.)

Agent Tumulty testified that the defendant did not ask for an attorney at any point during

his interview. (Tr. 103.) Nor did the defendant ever invoke his right to remain silent. (Tr. 103-04.)

The defense called no witnesses at the evidentiary hearing.

DISCUSSION

I.    Burden of Proof

Once a defendant establishes a basis for a motion to suppress, the government must prove that the admissibility of any disputed evidence is "proper by a preponderance of the evidence." United States v. You, 198 F. Supp. 2d 393, 397 (S.D.N.Y. 2002) (citing cases); see also Brown v. Illinois, 422 U.S. 590, 602 (1975) (stating that "the burden of showing admissibility [of seized items or statements by a defendant] rests, of course, on the prosecution"); United States v. Matlock, 415 U.S. 164, 177 n.14 (1974) (stating that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence"); United States v. Calvente, 722 F.2d 1019, 1023 (2d Cir. 1983) (noting that the government bears the burden of proof by a preponderance of the evidence at a suppression hearing). The Government here has met that burden.

II.   Defendant's Post-Arrest Statements

Defendant seeks to have his post-arrest oral statements made to law enforcement officers suppressed on the grounds that he "does not remember waiving his right to remain silent and knowingly making the statements that the government contends that he made." (Def. Mot. to Suppress 2.) The defendant's motion should be denied.

Miranda v. Arizona, 384 U.S. 436 (1966), mandates that the police may not interrogate a suspect who has been taken into custody without first warning the person "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." Id. at 479; accord Dickerson v. United States, 530 U.S. 428, 443-44 (2000) (revisiting and reaffirming Miranda). A suspect may waive his Fifth Amendment rights "provided the waiver is made voluntarily, knowingly and intelligently." Miranda, 384 U.S. at 444. The inquiry of whether a waiver is coerced "has two distinct dimensions:"

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran v. Burbine. 475 U.S. 412, 421 (1986) (quoting Fare v. Michael C., 442 U.S. 707, 725 (1979)).

Here, Agent Kies testified that the defendant was advised of his Miranda rights orally at the time of his arrest and again, in writing, prior to his interview.[2] Agent Tumulty also testified that he was present when the defendant was advised of his Miranda rights in writing. Both Agent

---

[2] At the close of the evidentiary hearing held on December 12, 2012, the Government advised the Court that it is not seeking to elicit at trial the statements made by the defendant prior to the oral advisement of his Miranda rights - e.g., the statements concerning the presence of a shotgun in the residence. (Tr. 118.) Accordingly, this Report and Recommendation does not address whether those statements should be suppressed.

Kies and Agent Tumulty testified that after being advised of his rights, the defendant acknowledged that he understood those rights and agreed to waive them. There is no evidence of any coercion or intimidation. The defendant signed the FD-395 form, indicating his willingness to waive his Miranda rights and speak with the agents. The Miranda advices were clear, succinct and in compliance with the seminal Miranda decision. At no time during his interview did the defendant request an attorney or invoke his right to remain silent after being advised of his rights. This testimony is not disputed. Instead, the record is clear that the defendant voluntarily and deliberately chose to talk to Agent Kies and to respond to his questions.

Based on Agent Kies and Agent Tumulty's testimony, which I credit, the defendant knowingly, voluntarily and intelligently waived his Fifth Amendment right against self-incrimination. There have been no allegations of "coercion of a confession by physical violence or other deliberate means calculated to break [defendant's] will." Oregon v. Elstad, 470 U.S. 298, 312 (1985). Absent evidence that defendant's "'will [was] overborne and his capacity for self-determination critically impaired' because of police conduct," his waiver was voluntary under the decision in Miranda. Colorado v. Spring, 497 U.S. 564, 574 (1987) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

The defendant is no stranger to the criminal justice system. He was asked if he understood his rights and he acknowledged that he did. In addition, he signed the FD-395, acknowledging that he understood his rights and was agreeing to waive them. The defendant never requested to speak with an attorney nor did he invoke his right to remain silent after questioning began or at any time during the interview. Accordingly, the defendant's decision to speak to the arresting agent after being advised of his rights and without an attorney present was

made knowingly and intelligently and his motion to suppress should be denied.

RECOMMENDATION

For the foregoing reasons, and based on the testimony and evidence received during the evidentiary hearing held on December 12, 2012, I recommend that defendant's motion to suppress the post-arrest oral statements made to law enforcement officers on January 11, 2012 be denied.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further appellate review. Thomas v. Arn, 474 U.S. 140, 145 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated: Central Islip, New York
       December 19, 2012

/s/ E. Thomas Boyle
E. THOMAS BOYLE
United States Magistrate Judge